UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION


G.D.C. (XXX-XX-5843)                    CIVIL ACTION NO. 09-cv-0251

VERSUS                                  JUDGE HICKS

U.S. COMMISSIONER SOCIAL                MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION


**REPORT AND RECOMMENDATION**

**Introduction**

Plaintiff was born in 1947 and has past work experience as a telephone assembler. She applied for disability benefits based on an alleged onset date of May 25, 1992. Her insured status lasted through December 31, 1997, requiring the establishment of disability on or before that date.

In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there are jobs that exist in significant numbers that the claimant can perform. If, at any step, the claimant is

determined to be disabled or not disabled, the inquiry ends.  See Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007).

ALJ Osly F. Deramus assessed the evidence and conducted the five-step analysis.  He found for Plaintiff at step one.  At step two, he found that Plaintiff has the following severe impairments: hypertension; status post tarsal tunnel (ankle) release; degenerative change of the lumbar spine; and obesity.  Tr. 16.

The ALJ found at step three that the impairments were not so severe as to meet or equal a listed impairment.  He next assessed Plaintiff's residual functional capacity ("RFC"). See Social Security Ruling 96-8p.  He determined that Plaintiff had the RFC to perform the full range of medium work, which involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  20 C.F.R. § 404.1567(c). Tr. 18.

The ALJ found at step four that Plaintiff was capable of performing her past relevant work as a telephone assembler, which the Dictionary of Occupational Titles classified as a light exertional job. Light work requires lifting of no more than 20 pounds occasionally, up to 10 pounds frequently, and standing and walking for up to six hours during an eight-hour workday, with sitting intermittently during the remaining time.  Accordingly, Plaintiff was deemed not disabled within the meaning of the regulations.  Tr. 21-22.  The Appeals Council denied a request for review.   Tr. 5.   Plaintiff then filed this judicial appeal.   It is

recommended, for the reasons that follow, that the Commissioner's decision be reversed and the case be remanded for further proceedings.

**Issues on Appeal**

Plaintiff lists two errors in her brief: (1) the ALJ did not have substantial evidence to support his finding that Plaintiff is not disabled; and (2) the ALJ did not meet his burden of showing there are jobs available she could maintain.

The Commissioner argues that these generic issues and the absence of argument targeting any particular error amounts to a waiver of argument.  The scheduling order does require the brief to list specific errors and warns that a "general allegation that the ALJ's findings are unsupported by substantial evidence, standing alone, is insufficient to invoke the appellate function of the federal court."  Doc. 6.  Plaintiff's counsel has nonetheless filed several briefs over the years that listed the generic "no substantial evidence" issue, as well as the second issue listed in this brief.  The assignment of error does not comply with the court's order and, despite mentions of this issue in the past, counsel has continued to file essentially the same assignment of errors and same framework of brief in every appeal.

The court has, out of a sense of fairness to the claimants, reviewed the briefs and considered them a general attack on the RFC assessment unless more specific argument was adequately fleshed out in the briefs.  The court will do the same in this case with respect to the first issue.  The court need not consider the second issue because the burden of showing

that there are jobs available in significant numbers in the economy does not arise until step five, and the ALJ ended the analysis in this case at step four.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Muse v. Sullivan</u>, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Mental Health**

The record contains evidence of both mental and physical health issues. The court will first address the mental health records and the ALJ's assessment of them. Clinical psychologist Mark Dulle performed a consultative examination in 1994. The Plaintiff and her husband told Dr. Dulle that her mental health was "worse than ever" and that she had been "nervous" for the last 10 or 12 years. Once active socially and with hobbies, she was limited to lying around the house like she was in a daze and crying frequently. However, Dr. Dulle wrote that Plaintiff was unable or unwilling to give information on a number of subjects. Her thinking seemed fairly organized and goal-directed. Her remote memory was

good, but her recent memory was poor, and she could effectively focus her attention only with great apparent effort.  She was unable to demonstrate an ability to think in the abstract, and she showed poor insight into how her behavior affects her situation.  Plaintiff was "more unwilling than unable to complete some of the tasks presented, even with prompting."  An attempt to evaluate her personality through a written test met with even less success.  Plaintiff completed only 107 of 566 items, skipping 48 along the way, when she announced that she was unable to continue.  She was told that the doctor would be able to help her more if she completed the test, and she said she just didn't want to think about it anymore.  Dr. Dulle's diagnosis included dysthymia and anxiety disorder, but also malingering.  He wrote that her prognosis was unknown and that she had presented as a person with problems or wanting to give the appearance of having problems but unwilling to provide meaningful data to confirm the reality of her condition.  Tr. 136-40.

Dr. Dean Robinson, a psychiatrist, conducted a consultative examination in 1995.  Plaintiff reported that she had recently been prescribed Paxil, and she related a history of "nervous episodes."  Dr. Robinson found that Plaintiff had "some depressive symptoms of mild to moderate severity."  He opined that Plaintiff "probably has a Major Depression or Dysthymic Disorder, possibly accompanied by an Anxiety Disorder not otherwise specified."  He recommended that she continue taking Paxil and suggested she start Librium at night.  Dr. Robinson noted that Plaintiff had started counseling to help her recovery process. He

concluded that Plaintiff was not disabled from a psychiatric standpoint, but her problems likely aggravate her physical symptoms.  Tr. 147-48.

At step two, deciding whether a claimant suffers from severe impairments, the Fifth Circuit holds that an impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  Stone v. Heckler, 752 F.2d 1099, 1101 (5th Cir. 1985).  The ALJ recited the applicable standard, with reference to Social Security Ruling 85-28, which clarified the step two standard in light of decisions such as Stone.  Tr. 15.

The ALJ reviewed the reports from Dr. Dulle and Dr. Robinson.  He observed that there was no evidence of mental health problems causing limitations in activities of daily living such as shopping and cooking, no evidence of limitations in social functioning such as getting along with family and friends, and there had been no episodes of decompensation. Plaintiff did have a mild limitation in her ability to maintain concentration, persistence, or pace.  The ALJ concluded that Plaintiff did not have a medically determinable mental impairment that rose to the level of a severe impairment within the meaning of the regulations.

Plaintiff generally discusses the medical reports and suggests disagreement with this conclusion, but she does not point to any particular errors committed by the ALJ at this step. The ALJ acknowledged some evidence of a mild mental impairment that required minimal

treatment with common prescription medication.  Plaintiff's refusal to cooperate with testing in this area also casts doubt on the claimed extent of her mental health problem.  There were, in the end, credible evidentiary choices and medical findings to support the ALJ's determination that the mental health impairment did not rise to the level of a severe impairment.  Accordingly, there is substantial evidence to support that decision.

**Physical Health**

Plaintiff claimed that constant low back and leg pain prevented her from performing any work since 1992.  The ALJ observed that previous testimony and filings indicated that, prior to the date last insured, Plaintiff was still able to drive a car, go shopping alone, attend church, visit friends, cook, do laundry, and perform other household chores (albeit at a reduced pace).  Tr. 19.  Plaintiff underwent a left tarsal tunnel release procedure in 1992, which improved her left foot and leg pain, but Plaintiff continued to complain of low back pain.  Medical records show that Plaintiff improved in the following months.  A nerve conduction study in 1993 showed "much improvement" over a prior exam, and Dr. Clinton McAlister recommended she increase her activities as pain would allow.  An examination in August 1993 showed a full range of motion of the back, no spasms, and no tenderness. Straight-leg raise tests were negative. Dr. McAlister wrote in April 1994 that he had been seeing Plaintiff since 1990 and that she had multiple difficulties, including degenerative arthritis in her lower back and the surgically released tarsal tunnel syndrome.  He wrote that Plaintiff's back caused her "difficulties with any heavy activity," and he said that he did not

think Plaintiff could do her prior work at AT&T.  He said that he could not say Plaintiff was physically disabled from doing any type of employment, but she was restricted in her activities because of her back and foot.  Tr. 113-34.

Dr. Michael Acurio, an orthopedic surgeon who practices with Dr. McAlister, wrote a letter to Plaintiff's counsel in July 2005.  He stated an opinion that Plaintiff was not able to compete in the job market because of multiple medical problems.  The only specific limitations he offered were that he did not think Plaintiff could stand at least six hours of an eight-hour workday.  Tr. 156.

Dr. Acurio wrote a second letter in December 2005.  He said he had reviewed Plaintiff's chart back to 1990.  He noted that Plaintiff had experienced significant problems with her back since the early 90's, to the point that Dr. McAlister recommended that Plaintiff retire as early as September 1990.  An MRI in 1997 was positive for lumbar disc disease, and Dr. Acurio had been treating Plaintiff for degenerative arthritis in her back as well as her knees and ankles.  He concluded that he did not believe Plaintiff has been able to work in the job market since the early 90's, and certainly not since he had been caring for her. Tr. 152-53.  Dr. Acurio wrote a third letter in December 2007 stating that Plaintiff had been a patient in the clinic since around 1990 and unable to work since 1992.  Tr. 174.

Plaintiff saw Dr. McAlister in February 1997 with complaints of problems with her back, extending down the right hip and leg.  Plaintiff said the problem had bothered her for a long time.  Examination revealed some limited range of motion of her back with no spasms.

Straight-leg raise tests on the right was positive at 50 degrees. X-rays revealed some degenerative changes, and Dr. McAlister suggested an MRI. Tr. 168.

Plaintiff saw Dr. Ross Nelson in April 1997. Plaintiff complained of the sudden onset of low back and right thigh pain about three weeks earlier. Plaintiff rated the pain at 10/10 and described it as intermittent, aching, sharp, shooting, and burning in character, associated with numbness, tingling, weakness, and muscle spasms. A lumbar exam found some tenderness. Plaintiff described pain with a straight-leg raise of 20 degrees, but she could sit with 90-degree straight-leg raise equivalent. Dr. Nelson's impression was intractable low back and right lower extremity pain correlated with spondylosis and disc degeneration. Tr. 144-46. Plaintiff returned the next month and was provided facet joint nerve rhizotomy with encouraging results. Dr. Nelson noted that Plaintiff had bulging discs at L3-4 and L4-5, as well as facet joint synovitis at those levels. Plaintiff was instructed to apply ice packs as needed, keep mobile, and return as needed. Tr. 143.

The ALJ reviewed these medical records. He correctly stated that he was not bound by Dr. Acurio's statements that Plaintiff was "disabled" or "unable to work." Such legal conclusions are for the ALJ. What is needed from a physician are medical findings and opinions about the claimant's health problems and particular limitations (standing, reaching, lifting, etc.) they impose. It is the ALJ's duty to then decide whether those limitations render the claimant disabled within the meaning of the law. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003).

A medical report should include the medical source's statement about what the claimant can still do despite her impairment. 20 C.F.R. § 404.1513(b)(6). The regulation states that the agency will request a medical source statement about what the claimant can still do, but the lack of such a statement will not automatically make the record incomplete. When the ALJ does not request such a medical statement, and the parties have not pointed to one in this record, the court's inquiry is whether the ALJ's decision is supported by substantial evidence in the record. Ripley v. Chater, 67 F.3d 552, 557-58 (5th Cir. 1995).

Dr. Acurio, a treating physician, did not provide a functional capacity evaluation but he did state that he did not believe Plaintiff could stand for six hours during a workday. Tr. 156. Such a limitation is inconsistent with light work. Other medical records suggest a significant back pain problem that could support such a limitation. The records suggest limitations, but there does not appear to be a functional capacity evaluation or other medical source statement of what Plaintiff can do despite her limitations. The ALJ nonetheless found that Plaintiff had the RFC to perform medium work and could return to her past light job as a telephone assembler. Tr. 21-22.

There is no positive statement from a medical source in the record that states that Plaintiff could, despite her limitations, perform the demands of her medium work RFC or even the light work of her past job. There is evidence of back and other problems that could reasonably interfere with the ability to meet such demands. Under these circumstances, the ALJ's decision is not supported by substantial record evidence.

A similar result was reached in <u>Ripley</u>, where the medical evidence established that the claimant had a problem with his back but did not clearly establish the effect the condition had on his ability to work.  The Fifth Circuit ordered the case remanded with instructions to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability work.  A similar remand was ordered in <u>Williams v. Astrue</u>, 355 Fed. Appx. 828 (5th Cir. 2009) when the ALJ discounted the opinions of three treating physicians, parsed through the various medical tests and other records, and concluded that the claimant could perform a full range of light work.  The Fifth Circuit found that, assuming the ALJ was entitled to not give controlling weight to the physician's opinions, there still must be evidence to support the finding that the claimant could stand and walk for six hours in a day. The ALJ could not rely on his own medical opinion as to those limitations.  The court, citing <u>Ripley</u>, remanded.

A remand is also appropriate in this case.  The agency may then request clarification from a treating physician, obtain an opinion from a consultative physician, or both.  The evidence should include a functional capacity evaluation or other positive statement of Plaintiff's abilities despite her limitations.  On remand, Plaintiff and the agency may further explore the issues addressed herein or any other relevant matters.  <u>See</u> 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case.").

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be reversed and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be remanded to the agency for further proceedings.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of August, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE